THRASHER v. ST. LOUIS & S. F. R. CO.

No. 9921—Opinion Filed Sept. 13, 1921.

Second Rehearing Denied April 25, 1922.

(Syllabus.)

1. Railroads—Accidents at Crossings—Contributory Negligence.

Ordinary prudence requires of any person possessed of their normal faculties of hearing and seeing, before attempting to pass over a known railway crossing to use them in discovering and avoiding danger from a passing train; and the omission to do so, without a reasonable excuse, is negligence, and if such negligence contributed to the injury of such a person, the action of such injured person should fail.

2. Same—Duty to "Look and Listen."

The rule that it is negligence per se of one driving an automobile not to "look and

listen" for a train when approaching a railway crossing is not, as a general rule, applicable in all of its force to a passenger in a car riding as the invited guest of the driver and who has no control over the driver or his management of the car, but the negligence of such guest must be determined according to all of the facts and circumstances existing at the time of the accident.

### 3. Same—Duty of Railroad—Reasonable Speed and Signals.

Where a railway company has knowledge of a highway crossing its tracks in a densely populated district, city, town, or village, it is charged with notice that travelers on the highway might be there about to cross or in the act of crossing such highway, and it is its duty to run its trains at a reasonable rate of speed, giving reasonable signals of the approach of the same.

### 4. Same — Action for Negligent Death — Contributory Negligence—Instructions.

In an action for damages for the alleged negligent killing of plaintiffs' decedent at a public railway crossing, where the defendant railway company pleaded the contributory negligence of the deceased, and that such contributory negligence consisted of certain acts of the deceased, it was the duty of the trial court to submit the issue of contributory negligence to the jury, as raised by the pleadings and the evidence, and the instructions to the jury ought to have reference to the circumstances of the case and be so given as to secure a fair consideration and judgment of the jury on the points in issue as raised by the pleadings and the evidence.

### 5. Trial—Instructions—Covering Issues.

Instructions which principally consist of correct abstract propositions of law but have no special reference to the circumstances of the case on trial are objectionable, and where from the consideration of all of the evidence it is probable the jury may have been misled by such instructions, a new trial ought to be granted.

### 6. Railroads—Action for Negligent Death —Crossing Accident—Concurring Negligence of Driver of Automobile—Guest of Driver.

In an action by plaintiffs' decedent, who was riding as a passenger by invitation of the driver in his car at the time of the fatal accident, the evidence shows such guest was seated on the rear seat of the car and was enclosed by reason of the curtains being up on the car, said curtains having small windows of isinglass affording but a meager opportunity for observing an approaching train, that the passenger had no control of the driver or the management of the car, and the evidence further discloses that the defendant railway company may have been negligent in the operation of its train, and that the driver of the car was negligent in attempting to cross the track of the defendant company without looking and listening for an approaching train. In such situation it was the duty of the trial court to instruct the jury that if they found from the evidence that the concurring negligence of the defendant railway company and that of the driver of the car was the proximate cause of the fatal accident, then and in that event the plaintiffs would be entitled to recover unless the jury further found from the testimony that the plaintiffs' decedent was guilty of contributory negligence, as defined in syllabus paragraph 2 hereof.

### 7. Same—Instruction—Last Clear Chance.

Where the evidence shows that the engineer in charge of the defendant company's train observed the automobile in which the deceased was riding approach the crossing where the fatal accident happened, and at a distance of 47 feet from the crossing where the deceased was killed he noticed the car cross the passing track of the defendant company and then speed up towards the crossing where the accident happened, the occupants of the car apparently unconscious of the approaching train, and the engineer having observed this situation and having failed to sound the whistle warning the driver of the car of the approaching train, and the testimony of a locomotive engineer called as a witness on behalf of the defendant company being that in such a situation the reasonable thing to have done would have been to sound the whistle in order to attract the attention of the driver of the car, the evidence further disclosing that the engineer in charge of the train did not make any attempt to stop the train until the automobile was within about 25 feet of where the accident happened—in such a situation it was the duty of the trial court under proper instructions to submit the doctrine of the last clear chance to the jury.

### 8. Trial — Province of Jury — Instructions —Credibility of Employes of Railroad.

A trial court in his instructions to the jury should not suggest to the jury that the testimony of the defendant company's witnesses, who are servants or agents of said defendant company, should be given any less or greater weight because of their relation to the defendant company. There is no legal presumption against the testimony of the servants or agents of a railroad company because they are such servants or agents, and an instruction that the defendant's witnesses must not be given any less weight because of the fact that they are witnesses in behalf of a railway corporation is wholly unnecessary and is an attempt to restrict the province of the jury in weighing the testimony.

Harrison. C. J., dissenting.

Error from District Court, Grady County; Will Linn, Judge.

A tion by H. F. Thrasher and J. H. Thrasher against the St. Louis & San Francisco Railway Company to recover damages for the alleged wrongful death of Mary L. Thrasher, deceased. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with directions to grant a new trial.

F. E. Riddle and Harry Hammerly, for plaintiffs in error.

W. F. Evans and Kleinschmidt & Grant, for defendant in error.

KENNAMER, J. H. F. Thrasher and J. H. Thrasher, as plaintiffs, instituted this action in the district court of Grady county against the St. Louis & San Francisco Railway Company, as defendant, to recover damages in the sum of $25,300 for the alleged wrongful death of Mary L. Thrasher. Upon the trial of the cause the jury returned a verdict in favor of the defendant; plaintiffs appeal; and in an opinion filed December 7th, 1920, this court affirmed the judgment of the district court and the cause is now before the court upon a petition for rehearing.

The record discloses that on or about December 17, 1916, Elijah Kirk, a friend of the Thrasher family, who lived about five miles west of Mountain Park, Oklahoma, went to the home of the deceased, Mary L. Thrasher, in Mountain Park, a small village of about 500 population, in an automobile for the purpose of conveying the decedent, Mary L. Thrasher, and other friends to his home, where he intended to celebrate his birthday by giving his village friends a dinner; that the home of the deceased, Mary L. Thrasher, was on the east side of the defendant's railroad tracks in the town of Mountain Park; that the tracks of the defendant company through Mountain Park ran in the general direction of northeast and southwest; that Elijah Kirk arrived at the home of Mary L. Thrasher, deceased, about 11 o'clock a. m., and that Olin Thrasher, grandson of the deceased, Mary L. Thrasher, seated himself in the automobile in the front seat by the driver; that Mr. and Mrs. Brashears and the deceased, Mary L. Thrasher, occupied the back seat of the automobile, the deceased, Mary L. Thrasher, occupying the north side of the rear seat, as Elijah Kirk drove the car west toward his home. The day was rather cool and considerable wind was blowing from the north; the curtains were up on the automobile, said curtains having small windows of isinglass in them.

Mr. Kirk undertook to cross the tracks of the defendant company at a public crossing in Mountain Park about one block from the defendant company's depot. There were three tracks of the defendant company at this particular crossing, consisting of the main track, the passing track on the east side of the main track, being about 47 feet distance apart, and the house track on the west side of the main line track, about 47 feet distance from the main track. It appears that the crossings of these tracks were in a poor state of repair, but the view to the crossing was unobstructed and a train could be seen approaching from the south anywhere from the east side of the crossing for several hundred feet east, a distance of from one-half to three-quarters of a mile; that the engineer in charge of the engine of the special freight train running from Snyder to Bessie, Oklahoma, as the automobile approached the crossing on Broadway about one block south of the depot, saw the same as the train proceeded from the south first when he was about 500 to 600 feet south of the crossing, and noticed the car slow up, almost coming to a stop, as it crossed the first switch track, and noticed the car proceed until the time the same was struck on the main track crossing by his train. The evidence of the engineer was that he noticed that the automobile speeded up after it crossed the first switch track about 47 feet east of the main crossing, where the accident happened.

At the time of the collision the evidence discloses that the train was running from 20 to 25 miles per hour. The engineer testified that when right by the side of the signal board for the particular crossing where the accident happened he started to blow the whistle, but did not finish blowing because his attention was brought to the automobile coming across the crossing. The train had been signaled to proceed through Mountain Park without stopping. The testimony of the train crew was that the bell was ringing the usual warning as the train was proceeding through the village. The evidence discloses that about the time the four wheels of the automobile had reached the center of the track the train struck it and demolished the car, killing Mary L. Thrasher, Elijah Kirk, the driver, and Mrs. Brashears, and injuring Olin Thrasher and Mr. Brashears.

This action is prosecuted by H. F. Thrasher and J. H. Thrasher, husband and son of the deceased, Mary L. Thrasher. The undisputed testimony in the case shows that the relation existing between Elijah Kirk, the driver of the automobile, and that of

Mary L. Thrasher, deceased, was that Mary L. Thrasher was a guest in the car by invitation of the driver, Elijah King, and that she and the other guests in the car were journeying to the home of Elijah Kirk for the purpose of a birthday dinner. The questions presented on this appeal are raised by the assignments of error challenging the correctness of the instructions given by the trial court defining the respective duties of the plaintiffs' decedent, Mary L. Thrasher, and of the defendant railway company.

The instructions complained of are found in Nos. 10 to 19, inclusive. The plaintiffs concede that the court instructed the jury that the negligence of the driver, Elijah Kirk, could not be imputed to the deceased, Mary L. Thrasher, but insist that, while the court instructed the jury that the negligence of the driver could not be imputed to the deceased, the instructions as a whole placed the same burden upon the deceased to exercise the same degree of prudence and care as would be required of the driver and that in effect the jury were instructed that if she failed to exercise that degree of care and prudence, she would be guilty of contributory negligence, and under the law the plaintiffs could not recover in the action. Plaintiffs insist that, the deceased, being situated as she was in an enclosed car seated on the back seat, having no control whatsoever of the car, and nothing appearing to suggest that the driver was incompetent or careless, and the deceased having no authority or power to direct the movements of the car, the court's instructions holding her to the same degree of care and prudence in approaching the crossing on the tracks of the defendant company placed a burden upon the deceased not warranted by law.

Counsel for the defendant contend that the law as announced in the second paragraph of the syllabus of the opinion, as originally filed herein, announces the rule of law applicable to the case at bar, said syllabus paragraph being as follows:

"Where the driver and occupants of an automobile are traveling in companionship on a mission of mutual interest in approaching a railroad crossing, it is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger, and to avoid it if practicable, the movement and control of the vehicle being considered as much under the direction and control of one as of the other."

It is urged by counsel for the defendant company that the law as announced in the second paragraph of the syllabus is supported by the overwhelming weight of authority. It is true, where the vehicle is as much under the control of the occupant as it is of the driver, that the rule contended for by the defendant is supported almost uniformly by the authorities, but in the case at bar it cannot seriously be contended that the deceased, Mary L. Thrasher, a woman of about 58 years of age, sitting as guest in an automobile driven by a man of mature years, had any control whatsoever of the operation of the machine. And upon an examination of the authorities, including the state of Pennsylvania, where the unbending rule of law is in force that if you fail to stop, look, and listen before attempting to cross a railroad track at a crossing you are guilty of contributory negligence and cannot recover from injuries received in an accident, we find that the courts almost uniformly hold that the rule requiring a person before crossing a railroad track to look and listen for an approaching train is not applicable in all its force to a passenger in a vehicle, who has no control over the driver or his management of the vehicle. This rule is in harmony with common sense and justice. Negligence is the absence of care according to the circumstances, and what would be negligence under a certain state of facts would not be under a different state of facts. Negligence means merely the want of ordinary or reasonable care according to the circumstances.

Upon a careful examination of the instructions given in the case at bar it is apparent that the court failed to instruct the jury in harmony with the facts as presented by the evidence or the issues as raised by the pleadings, but merely stated in a general abstract way certain propositions of law. Instruction No. 10 told the jury in a general way the respective duties of a traveler upon a public highway and of a railroad company with respect to each other at public crossings. The jury was told that a traveler must stop at a public crossing if a train is approaching in plain view, unless it reasonably appears that he can with safety cross the railroad before the train reaches the crossing; that the train has the right of way over the crossing against the traveler; that in considering whether decedent, Mary L. Thrasher, was guilty of contributory negligence the jury must bear in mind that the law required of her the same degree of care and prudence for her safety that is required of the railway company to exercise to avoid the accident; that, no matter how negligent the railway company may have been in running the train in question, if the plaintiffs' decedent, Mary L. Thrasher, failed to look for the approaching train at a

point where if she had looked she would have seen it in time to have avoided the accident, or if she looked and failed to see it when she should have seen it by proper vigilance, and if the jury found from the evidence that such omission was negligence, then the jury might find that she brought the accident upon herself, and plaintiffs were not entitled to recover; and the court in general in his instructions to the jury cast the same burden upon the deceased as if she had been operating and driving the machine in which she was riding.

That part of instruction No. 10 advising the jury that it was immaterial how negligent the defendant company was in running its train, if the plaintiffs' decedent, Mary L. Thrasher, failed to look for the approaching train, considered in connection with other instructions given in the cause, advising the jury that it was the duty of the deceased to look and listen before attempting to cross the tracks of the defendant company, and that if she failed to do so she brought the accident upon herself and the plaintiffs were not entitled to recover, was misleading and prejudicial error, in that it withdrew from the consideration of the jury the question of whose negligence was the proximate cause of the injury. A failure to look or listen for an approaching train, though such failure may contribute to the injury, cannot in all circumstances be regarded as negligence; whether such failure to look and listen is regarded as negligence must depend upon the circumstances of the particular case. For instance, if the use of her eyes and ears to the extent of her opportunity would have not prevented the collision, she was not guilty of contributory negligence; and, again, if the circumstances were such as would have excused a person of ordinary prudence from looking or listening for an appraching train, she was not guilty of negligence; or if the circumstances were such that a prudent person would not ordinarily look or listen for an approaching train there is no negligence in omitting to look or listen.

The evidence in the case at bar discloses that the defendant knew of the existence of the highway crossing where the accident happened, and such crossing being located in a village of about 500 population, frequently used by the inhabitants of the village, the defendant company was bound to apprehend that travelers on the highway might be there about to cross, or in the act of crossing, and under such circumstances the law imposed upon the railway company the duty to run its trains at a reasonable rate of speed as it approached. the crossing, and the giving of reasonable signals of its approach so that such travelers might keep off the track if approaching it. This rule of law is supported by the authorities, and the reason for the same is apparent. 33 Cyc. 922; 2 Thompson, Commentaries on the Law of Negligence, par. 1552; 22 R. C. L. pp. 987-989; Baltimore & Ohio R. R. Co. v. Griffith, 159 U. S. 603-608, 609, 16 Sup. Ct. 105, 40 L. Ed. 274; Continental Improvement Co. v. Stead, 95 U. S 161-169, 24 L. Ed. 403; Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; Delaware, Lackawanna, etc., R. R. v. Converse, 139 U. S. 469-472, 11 Sup. Ct. 569, 35 L. Ed. 213.

In the case of Continental Improvement Co. v. Stead, supra, the Supreme Court of the United States said:

"The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell; and this caution is especially applicable when their sound is obstructed by winds and other noises, and when intervening objects prevent those who are approaching the railroad from seeing a coming train. In such cases, if an unslackened speed is desirable, watchmen should be stationed at the crossing. * * * For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with, and conditioned upon, the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty."

We believe that the instruction as given imposed upon the deceased, situated as she was, a passenger in the automobile having no control over the operation of the same, too much of the burden of avoiding the collision and relieved the train crew entirely from responsibility in the matter.

In instruction No. 12 the court instructed the jury that each succeeding track is a warning of danger, and the same degree of care should be exercised with each track, and that it was the duty of plaintiffs' decedent, Mary L. Thrasher, to use her senses to ascertain if there was a train approach-

ing on the east passing track before reaching the main line, and to look and listen for approaching trains before attempting to cross said track, and after crossing same to likewise use her faculties before going upon the main line, and not permit her attention to be diverted from the danger before her.

In instruction No. 13 the court told the jury that the fact, if such they found to be a fact, that the view of the plaintiffs' decedent along the defendant's track in the direction of the approaching train was not obstructed would not excuse her from exercising the degree of care hereinbefore stated, and the fact that the plaintiffs' decedent, Mary L. Thrasher, was not driving or operating the automobile at the time of the accident would not excuse or relieve her from the duty of looking and listening for an approaching train, nor would it relieve her of the duty of calling the attention of the driver to an approaching train, should she in the exercise of reasonable care discover the approach of said train.

A casual consideration of these instructions shows that the court advised the jury that if the plaintiffs' decedent, Mary L. Thrasher, occupying the rear seat of the automobile, away from the driver, did not exercise all of the care and prudence required of the driver, she would be negligent in her duties and the plaintiffs could not recover.

The defendant in its answer pleaded contributory negligence on the part of the deceased on account of her permitting herself to be driven in the automobile by Elijah Kirk, a man more than 75 year old, whose eyesight and hearing were defective, and with the curtains on the side of the automobile completely enclosing the decedent within the car, where she could have no opportunity to observe the approaching of the train except through the small windows of the curtains of said car. The instructions, as given by the court, did not attempt to advise the jury as to the allegations of the answer charging the decedent with specific acts of contributory negligence. It was the duty of the court to advise the jury in the instructions as to the acts of contributory negligence charged in the answer of the defendant, and that the burden of proof was upon the defendant to establish such acts, and that in the event evidence and circumstances surrounding the accident failed to establish the allegations of the answer charging contributory negligence, the defendant had failed to establish its plea of contributory negligence.

At no time did the court instruct the jury that if they found from the evidence that the defendant company was guilty of negligence

in operating the train, and that its negligence, concurring with the negligence of the driver of the car, Elijah Kirk, was the proximate cause of the injury, and if the decedent, sitting as she was as a guest in the car was exercising due care and prudence for her own safety, then and in that event the plaintiffs would be entitled to recover. In our judgment upon the facts, as disclosed by the record, this was the theory upon which the cause should have been submitted to the jury. The facts are undisputed that the deceased was a guest by invitation in the car; that she had no control over the operation of the machine as it crossed the tracks of the defendant company. Her opportunity to see the train, situated as she was on the back seat with the curtains on the car enclosing her, was very meager. The record fails to disclose any evidence indicating that the deceased had anything to suggest to her that the driver was incompetent, or that she would not be in the exercise of ordinary care in riding in the car with him. While it is true that it is the duty of a passenger riding in an automobile as the guest of the driver not to submit her safety entirely to the prudence and care of the driver, yet she is only required to exercise such degree of care and prudence as may be expected of a reasonably prudent person situated under similar circumstances, and such a passenger situated as the deceased was in the case at bar cannot be held guilty of contributory negligence as a matter of law merely because she remained silent and did nothing. In the case of Ilardi v. Central Cal. T. Co., 36 Cal. App. 488, 172 Pac. 763, the court said:

"Such interference by the passenger or guest where the vehicle is about to be placed in a position of danger might prove to be gross imprudence and so disconcert the driver as to cause the disastrous result which such interference was designed to avoid."

In the case of Carpenter et al v. Atchison, T. & S. F. Ry. Co., 195 Pac. 1073, the Supreme Court of California in the fifth paragraph of the syllabus held:

"If decedent, a passenger in another's automobile. when the car reached a point 30 feet distant from a railroad crossing, while moving at only four miles an hour, saw a train 300 feet away approaching at high speed, his failure to interfere with the driver's operation of the car rather than to rely on the latter's judgment in escaping the threatened danger, and his failure to leave the car, cannot be said, as a matter of law, to have constituted contributory negligence."

In the case of Hermann v. Rhode Island Company, 36 R. I. 447, the court held:

"Where the plaintiff was riding as a guest in an automobile having no control over the driver, in case of an accident caused by the negligence of a third person, the contributory negligence of the driver cannot be imputed to plaintiff. It would be the duty of plaintiff under such circumstances to use reasonable care for his own safety, and whether he exercised such degree of care is primarily a question for the jury, and it cannot be said as a matter of law that the plaintiff was guilty of negligence because he did nothing, nor where the situation of danger came unexpectedly would a court be justified in setting aside the finding of the jury that plaintiff was not guilty of contributory negligence because he failed to tell the driver to stop or to caution him, nor because he failed to leave the machine, where under the evidence such act in all probability would have placed him in greater danger."

For other authorities see Gina Liabraaten v. Minn., St. Paul & Saulte Stc. Marie Ry. Co., 105 Minn. 207; Howe v. Minn. Ry. Co., 62 Minn. 71; Schultz v. Old Colony St. Ry. Co. (Mass.) 8 L. R. A. (N. S.) 597, 79 N. E. 873, 118 Am. St. Rep. 502, 9 Ann. Cas. 402.

It appears from the record, the instructions of the court, and the contentions made by counsel for the defendant company that the deceased, Mary L. Thrasher, was required to exercise the same degree of prudence and care as is required of occupants in an automobile or vehicle traveling in companionship with the driver on a mission of mutual interest where one companion has equal authority with the other in the control and operation of the machine or vehicle, but we are unable to agree with this contention in view of the facts disclosed by the record in the case at bar. There is no evidence tending to show that the occupants of the car at the time of the fatal accident had equal opportunity to manage and control the same, and it would indeed be a very presumptuous act on the part of the guests of the driver in an automobile to assume the authority of dictating to him the route he must travel and the manner in which he must drive the car in conveying them to his home where he expected to entertain them, in the absence of anything in his conduct suggesting that he was a reckless or dangerous driver.

Counsel for the defendant, in their response filed to the petition for rehearing state:

"To the extent of one's ability to see and appreciate the danger in approaching a railroad crossing, all of the courts, with perfect unanimity, impose the same duty upon each and all of the occupants of a vehicle, irrespective of their relation to the driver. This is a salutary rule of law; it is reasonable and just, and is the rule which the court has adopted and applied in the second syllabus in the instant case, and it should not be modified. The duty to look and listen and to avoid danger should be as obligatory upon a guest or mere invitee riding in a vehicle, as upon the driver, and ordinarily such person is in a better position to ascertain and discover danger than the driver of the vehicle, whose attention must be given to the management of same, and to excuse all other occupants of a vehicle from the duty of exercising ordinary care for their own protection, would be contrary to reason and justice, and to the overwhelming weight of authority."

We believe the statement of counsel for defendant to be substantially a correct statement of the law, with this modification: That it is incumbent upon the occupants of the car, to the extent of their ability and opportunity, to appreciate the danger and to use ordinary care and prudence according to the situation and circumstances as they existed. In the case at bar the degree of care and prudence which must be imposed upon the deceased at the time of the fatal accident must be measured by her ability and opportunity and her situation at the time. In the cases of Pyle v. Clark et al., Clark et al. v. Wright, 25 C. C. A. 193, the Circuit Court of Appeals for the Eighth Circuit, in an opinion by Judge Sanborn, said:

"The negligence of the owner and driver of a vehicle cannot be imputed to one who is riding with him gratuitously, so as to defeat a recovery for an injury caused by the concurring negligence of the driver and the third person. Railway Co. v. Lapsley, 4 U. S. App. 542, 2 C. C A 149, and 51 Fed. 174, 178, and cases there cited; Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391. It may be that a person of ordinary prudence riding with another under such circumstances as existed in this case would put a certain trust in the driver, — would naturally expect that he would watch for the approach of danger from his side of the vehicle, and that he would not drive forward unless he was assured that there was none in that direction; and that in this way one might be lulled into some degree of security, and led to watch for danger from his own side, and be less cautious about its approach from the opposite direction than he would be if he were the driver. The question was whether Wright exercised such care as a person of ordinary prudence would have used under the circumstances of his case."

In applying the test as to whether or not the deceased, Mary L. Thrasher, was guilty of contributory negligence, the question is whether she exercised such care as a person of ordinary prudence would have used under the circumstances as they existed at time of the accident. This rule has been followed by this court in the case of Oklahoma Rail-

way Co. v. Thomas, 63 Okla. 219, 164 Pac. 120. Mr. Justice Hardy, delivering the opinion of the court, said:

"The authorities in this country are nearly uniform to the effect that where a person is riding in a vehicle over which he has no authority, and where he has no control over the driver, and has no reason to suspect a want of care, skill, or sobriety upon his part, and is injured by the concurring negligence of the driver and some third person or corporation, the negligence of the driver is not imputed to him so as to prevent a recovery for damages from the other tortfeasor. This question was very thoroughly considered by the Supreme Court of Massachusetts in Schultz v. Old Colony St. Ry., 193 Mass. 309, 79 N. E. 873. 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 402, in which the authorities throughout the country were collected and reviewed. This case is a valuable one in this respect, and deduces the following rules: That where an adult person possessing all his faculties and personally, in the exercise of that degree of care which common prudence requires under all the attending circumstances, is injured through the negligence of some third person, and the concurring negligence of one with whom the plaintiff is riding, as guest or companion, between whom and the plaintiff the relation of master and servant or principal and agent or moral responsibility in the common enterprise does not in fact exist, the plaintiff being at the time not in position to exercise authority or control over the driver, then the negligence of the driver is not imputable to the injured person, but the latter is entitled to recover against the one through whose wrong his injuries were sustained. Disregarding the passenger's own due care, the test whether the negligence of the driver is to be imputed to the one riding depends upon the latter's control or right of control of the actions of the driver so as to constitute in fact the relation of principal and agent or master and servant. or his voluntary unconstrained, noncontractual surrender of all care for himself to the caution of the driver. And this same rule applies in cases where the vehicle in question is an automobile. 2 R. C. L. 1207; The Law Appl. to Motor Vehicles, Babbitt, par. 596, p. 474; Berry's Law of Automobiles, par. 180; Huddy on Automobiles, par. 114; Daniel's Law of Motor Vehicles. sec 230.''

It is obvious from the rule as announced in the last cited case that the only degree of care and prudence required was such that a person possessing all of his faculties would exercise under all of the attending circumstances. We conclude that the instructions of the court in requiring the deceased, Mary L. Thrasher, to exercise all of that degree of care and prudence that would have been expected of her had she been riding upon the front seat of the car, driving and operating

the same, cast upon her a burden not warranted or authorized by law, and that the instructions of the court were fundamentally erroneous in presenting the cause to the jury upon that theory.

The court in No. 11 instructed the jury as follows:

"You are instructed, gentlemen of the jury, that the fact that the defendant is a railroad corporation does not justify you in giving to the testimony of the defendant's witnesses any less weight than you would otherwise give them."

This instruction was uncalled for and unwarranted. It is highly improper for a trial court to specifically designate any particular witness, or class of witnesses, and advise the jury to give their testimony any greater or any less weight than any other witness or class of witnesses. It is an invasion of the province of the jury to undertake to direct them as to how much weight, or credibility, the testimony of any witness, or class of witnesses, is entitled to in the cause. In the case of Solomon R. Co. v. Jones, 8 Pac. 731, the Supreme Court of Kansas, speaking through Horton, C. J., said:

"A trial court ought not to instruct or suggest to a jury that the servants or agents of a railroad company, who are called as witnesses. have any such interest, simply because they are the servants or agents of the corporation. as affects their testimony. There is no legal presumption against the testimony of the servants or agents of a railroad company simply because they are such servants or agents; and special instructions that they have an interest, or no interest, simply because they are such servants or agents sufficient to affect their testimony are wholly unnecessary."

See Phenix Ins. Co. v. Lapointe, 118 Ill. 384.

It is not improper for the court to charge the jury generally as to their duty in weighing and considering the testimony of witnesses; that it is their duty to take into consideration the interest, if any, the witnesses may have, their prejudice, their means of knowledge, or lack of knowledge, about the facts of which they attempt to testify and, their demeanor upon the witness stand; but the court cannot bolster up the testimony of any particular witness or class of witnesses by a specific reference to the weight or credibility to be given to their testimony.

Counsel for the plaintiffs insist that the court should have instructed the jury on the doctrine of the last clear chance. This

request was not made of the trial court until after the jury had been out deliberating on their verdict for about 24 hours. We do not believe that counsel for the plaintiff are in a position to insist that there was error on the part of the trial court in refusing the request, the same having not been made before the court delivered his instructions to the jury; but, inasmuch as this cause must be reversed on account of the errors herein referred to, we deem it advisable to pass upon the question raised as to whether or not the plaintiffs are entitled to go to the jury under proper instructions upon the doctrine of the last clear chance.

Counsel for the defendant company contend that, under the facts, as disclosed by the record in this cause, the doctrine of the last clear chance has no application, according to the decisions of this court in the cases of Oklahoma City Ry. Co, v. Barkett, 30 Okla. 28, 118 Pac. 350, and St. Louis & S. F. Ry. Co. v. Kral, 31 Okla. 624, 122 Pac. 177.

In the case of Oklahoma City Ry. Co. v. Barkett, supra, this court approved the rule announced in the case of Clark v. St. Louis & S. F. R. Co., 24 Okla. 764, 108 Pac. 361:

" 'The engineer has the right to presume that a person thus approaching the track has not omitted the ordinary precautions imposed upon him by law, and will stop in time to avoid the injury. But when the engineer sees the plaintiff approaching the track apparently unconscious of his danger or unable to extricate himself therefrom, the humanitarian doctrine requires the engineer to exercise reasonable care and prudence to avoid injuring him. In other words, he may not, without incurring civil liability, deliberately run down and kill or seriously, injure a person so situated, although it may have been shown that his negligence contributed to the injury. This rule of last clear chance is recognized by the courts, as an exception to the general rule that the contributory negligence of the person injured will bar a recovery, without reference to the degree of negligence on his part, and under this exception to the rule it may now be stated to be well established that the injured person, or his representative, may recover damages for an injury resulting from the negligence of the defendant, although the negligence of the injured person exposed him to the dangers of the injury sustained, if the injury was more immediately caused by the want of care on the defendant's part to avoid the injury after discovering the peril of the injured person.'

"This rule is amply supported by the authorities from other jurisdictions. Chunn v. City & S. Ry., 207 U. S. 302, 28 Sup. Ct.

63, 52 L Ed. 219; Kirtly v. C. M. & St. P. (C. C.) 65 Fed. 386; St. L. & S. F. R. Co. v. Summers, 173 Fed. 358, 97 C. C. A. 328: G., C. & S. F. v. Bolton, 2 Ind. T. 463, 51 S. W. 1085; Highland Ave. & B. R. Co. v. Sampson, 91 Ala. 560, 8 South. 778; L. & N. R. Co. v. Richards, 100 Ala. 365, 13 South. 944; Little Rock R. Co. v. Cavanesse, 48 Ark. 106, 2 S. W. 505; St. L., I. M. & S. v. Taylor, 64 Ark. 364, 42 S. W. 831; Penn. Co. v. Sinclair, 62 Ind. 301, 30 Am. Rep. 185; Dyerson v. U. P. R. Co., 74 Kan. 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132, and note; Judson v Railroad Co., 63 Minn. 248, 65 N. W. 477; Fonda v. St. Paul Ry. Co., 71 Minn. 438, 74 N. W. 166, 7 Am. St. Rep. 341; Zimmerman v. Railroad Co., 71 Mo. 477; U. P. R. Co. v. Mertes, 35 Neb. 204, 52 N. W. 1099; San Antonio Traction Co. v. Kelleher, 48 Tex. Civ. App. 421, 107 S. W. 64; 3 Elliott on Railroads (2d Ed.) sec. 1175. The English rule is the same. Pollock on Torts (Webb's Ed.) pp. 575-580; 1 Beven on Negligence, pp. 149-155."

The record in this cause discloses that the engineer testified that he saw the automobile at the time it crossed the east switch track, which was 47 or 48 feet from the main line crossing, where the accident happened and the deceased was killed. He noticed the car when it crossed the east switch speed up and continue its course towards the main line crossing, and although the engineer observed this car speeding up and going directly towards the crossing on the main line, where the fatal accident happened, the driver apearing to be unconcious as to the apparent danger, the engineer at no time during this time warned him of the danger by sounding the whistle. An engineer called as witness for the defendant testified that in such a situation it was an ordinary precaution to warn the approaching pedestrian by sounding the whistle and attracting his attention. Under the testimony as presented by the defendant, clearly it was a question for the jury whether the defendant company exercised all reasonable precautions to prevent the accident after discovering the perilous condition of the automobile in rapidly approaching the crossing, its occupants apparently unconscious of the approaching train, and the doctrine of the last clear chance should have been submitted to the jury under proper instructions.

In the case of Heddles v. Chicago, etc., Ry. Co., 77 Wis. 228, the court said:

"The mere fact that a traveler is approaching the track is not sufficient to require the engineer to give an alarm or stop his engine, especially where it is broad daylight, the engine plainly visible and the engine

bell ringing and the traveler an adult in apparent possession of his senses and looking in the direction of the train; and in such a case the engineer would have a right to not rest upon the assumption so long as to allow his engine to reach a point where it will become impossible for him to control his train or give warning in time to prevent injury to the traveler, supposing the traveler to continue his course."

The former opinion herein is withdrawn, and the cause is reversed and remanded, with directions to the trial court to grant a new trial and proceed with the cause in harmony with the views herein expressed.

McNEILL, MILLER, ELTING, and NICHOLSON, JJ., concur. HARRISON, C. J., dissents.